UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------
DOROTHY JEREMIAH,

                Plaintiff,

vs.

ELTMAN, ELTMAN & COOPER, P.C.

                Defendant.
-----------------------------------------------------------

Civil Action No.:
**13 CV 8982**

**COMPLAINT**

**DEMAND FOR JURY TRIAL**

      Plaintiff DOROTHY JEREMIAH ("Plaintiff"), by and through her attorneys, LAW OFFICES OF ALLISON POLESKY, P.C., as and for her Complaint against the Defendant ELTMAN, ELTMAN & COOPER, P.C. ("Defendant" and/or "EEC") respectfully sets forth, complains and alleges, upon information and belief, the following:

## JURISDICTION

      1.      This action arises out of violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA") by Defendant and their collection agents in their illegal efforts to collect a consumer debt from Plaintiff.

      2.      Jurisdiction of this Court arises under 28 U.S.C. § 1331 and pursuant to 15 U.S.C. § 1692k(d). The Court has supplemental jurisdiction over any state, local and common law claims in this action pursuant to 28 U.S.C. §1367(a).

      3.      Venue is proper in this District 28 U.S.C. § 1391(b)(1) and (2) because the acts and transactions occurred here, Plaintiff resides here, and Defendants transact business here.

## PARTIES

4. Plaintiff is a natural person who resides in the State of New York and County of Rockland and is a "consumer" as that term is defined by 15 U.S.C. 1692a(3).

5. Defendant EEC is a debt collection law firm and New York business entity and engaged in business of collecting consumer debts in this state and judicial district with its principal place of business located at 140 Broadway, 26th FL, New York, NY 10005-1108, and is a "debt collector" as the phrase is defined and used in the FDCPA under 15 U.S.C. §1692a(6).

6. Defendant EEC regularly attempts to collect consumer debts due to another in the State Courts in New York.

## FACTUAL ALLEGATIONS

7. Plaintiff repeats, reiterates and incorporates the allegations contained in paragraphs numbered "1" through "6" herein with the same force and effect as if the same were set forth at length herein.

8. On information and belief, on a date better known to the Defendant, Palisades Acquisition XVI, LLC as Assignee of Providian Financial, either directly or through intermediate transactions assigned, placed, transferred, or sold a consumer debt to Wolfpoff & Abramson, LLP ("W&A") for collection ("the alleged debt").

9. The alleged debt is a "debt" as defined by 15 U.S.C. §1692a(5).

10. The alleged debt arose out of a transaction in which money, property, insurance or services, which are the subject of the transaction, are primarily for personal, family or household purposes and is therefore a "debt" as that term is defined by 15 U.S.C. § 1692a(5).

11. On or about September 28, 2007, W&A filed a lawsuit against Plaintiff in the Rockland County Supreme Court, titled Palisades Acquisition XVI, LLC v. Dorothy Jeremiah, Index Number CV-8845/07 ("state action").

12. An Affidavit of Service was filed in the state action alleging that service of process had been made on Plaintiff on October 19, 2005 by leaving a copy of the summons and complaint affixed to the door at 145 Parkway Trailer Ct, Pomona, NY 10970 ("the subject premises") after speaking with "Jane Coe, Neighbor".

13. Plaintiff had no such "neighbor" at the subject premises in October 2005 because Plaintiff had moved from the subject premises several years earlier, and, in fact, was residing in a different part of the county on the date of the alleged service.

14. As a result of W&A and Palisades Acquisition XVI LLC's actions, Plaintiff failed to receive timely notice of the lawsuit against her for the alleged debt.

15. As a result of Plaintiff's failure to receive timely notice of the lawsuit against her, Plaintiff failed to answer the summons and complaint.

16. On or about December 14, 2007, W&A and Palisades Acquisition XVI LLC obtained a "default judgment" against Plaintiff.

17. At some time between 2007 and the present, the Default Judgment was acquired by EEC for the purposes of collection or attempted collection of the alleged debt.

18. At some time during the past one year prior to the filing of this action, Defendant EEC attempted to collect the alleged debt from Plaintiff.

19. On information and belief, Defendant failed to file with the clerk a consent to the change attorney signed by the retiring attorney and signed and acknowledged by Palisades Acquisition XVI, LLC pursuant to CPLR § 321.

20. Defendant failed to provide notice of such change of attorney to the Plaintiff pursuant to CPLR § 321.

21. Plaintiff is without any knowledge or proper notice that Defendant is in fact the attorney and agent designated by Palisades Acquisition XVI, LLC to collect or attempt to collect the default judgment.

22. On or about November 19, 2012, Defendant EEC, by and on behalf of Palisades Acquisition XVI, LLC, caused a collection or "dunning" letter to be sent to Plaintiff via U.S. mail ("letter").

23. Telephone conversation(s) and collection/"dunning" letters, such as the letter dated November 19, 2012, in the year prior to the filing of the instant action between the Plaintiff and the Defendants and / or employee(s) of the Defendants regarding the alleged debt each constituted a "communication" as defined by FDCPA § 1692a(2).

24. Telephone conversation(s) and collection/"dunning" letters, such as the letter dated November 19, 2012, in the year prior to the filing of the instant action between the Plaintiff and the Defendants and / or employee(s) of the Defendants regarding the alleged debt each conveyed information regarding the alleged debt directly or indirectly to the Plaintiff.

25. The letter is a form letter.

26. On information and belief, Defendants send form letters containing language substantially similar or materially identical to that contained in the letter to hundreds, if not thousands, of consumers within the State of New York and across the United States.

27. The letter states "Please be advised that Eltman, Eltman & Cooper P.C. has been retained by Palisades Acquisition XVI, LLC, purchaser of the above account, for collection of this debt."

28. The letter contains a disclaimer that states, "Currently, no attorney with the firm has personally reviewed the particular circumstances of your account, and this letter should not be taken as a representation of any such review nor as a threat of legal action."

29. Nowhere in the letter did Defendant EEC inform Plaintiff or other similarly situated consumers that an attorney had already filed a lawsuit/complaint against her back in 2007 by and on behalf of Palisades Acquisition XVI, LLC in Rockland County Supreme Court regarding the alleged debt.

30. Nowhere in the letter did Defendant EEC inform Plaintiff that an attorney was taking or had already taken legal action against Plaintiff by and on behalf of Palisades Acquisition XVI, LLC for the alleged debt.

31. Nowhere in the letter did Defendant EEC inform Plaintiff that an attorney had analyzed Plaintiff's case and that an attorney had rendered legal advice to the creditor, Palisades Acquisition XVI, LLC, concerning Plaintiff's case.

32. Nowhere in the letter did Defendant EEC inform Plaintiff that an attorney had been meaningfully involved in Plaintiff's case and that EEC and/or an attorney had rendered legal advice to the creditor, Palisades Acquisition XVI, LLC, concerning Plaintiff's case prior.

33. In fact, on the contrary, Defendant explicitly stated otherwise in the letter that "Currently, no attorney with the firm has personally reviewed the particular circumstances of your account, and this letter should not be taken as a representation of any such review nor as a threat of legal action."

34. Given the actions that had already been taken by EEC and other attorneys, this statement specifically and the letter generally are false, deceptive, misleading and a misrepresentation.

35. Prior to and at the time EEC had sent the letter to Plaintiff, an attorney for EEC and other law firms had personally reviewed Plaintiff's alleged debt with Palisades.

36. Alternatively, Defendant EEC has admitted to taking legal action against Plaintiff in the state action for the collection and/or attempted collection of the alleged debt without an attorney first personally reviewing the particular circumstances of Plaintiff's alleged debt.

37. Alternatively, Defendant ECC has admitted that a non-attorney from its firm caused an Income Execution pursuant to CPLR § 5231 to be filed and executed in the state action for the collection and/or attempted collection of the alleged debt without any attorney involvement at any time.

38. Alternatively, Defendant EEC has admitted that attorneys with its firm do not personally review the particular circumstances of Plaintiff's or other similarly situated consumers' accounts prior to EEC filing/instituting legal action against them, including but not limited to, judgment enforcement.

39. Said actions in lines 36-38 constitute the unauthorized practice of law.

40. The letter is false, deceptive, misleading, and a misrepresentation of the status of the alleged debt in that Defendant misrepresented and/or implied that legal action had not yet been taken against Plaintiff when in fact that is false as legal action has already been taken.

41. The letter states, "However if you fail to contact this office, our client may consider the availability of additional remedies to cover the balance."

42. Said statement by Defendant in the letter is false, deceptive, and misleading in that there are a number of remedies available to Defendant to collect or attempt to collect the alleged debt but certain remedies are only available to Defendant at certain times, including but not limited to, whether a lawsuit has been or can be filed and/or if there is or is not a valid judgment entered by a court that is in effect.

43. Defendant's failure to disclose to Plaintiff that legal action was already taken and that a default judgment was already obtained against her deprives Plaintiff of the ability to

understand what remedies Defendant is referring to and the ramifications of such remedies as they relate to Plaintiff's particular circumstances.

44. The letter misrepresents the urgency with which the alleged debt must be resolved by Plaintiff as Defendant did not inform Plaintiff that legal action has already commenced and falsely implies that the alleged debt has not even been reviewed by an attorney and that no legal threat should be taken from the letter by Plaintiff.

45. The letter is a boilerplate "communication" as defined by the FDCPA, the form of which was prepared and approved by EEC individually for use in its collection process whether or not the debts at issue were in a pre-litigation collection status or filed in court for litigation.

46. On or about February 1, 2013, Defendant EEC, by and on behalf of Palisades Acquisition XVI, LLC, caused another collection or "dunning" letter to be sent to Plaintiff via U.S. mail ("second letter").

47. Telephone conversation(s) and collection/"dunning" letters, such as the second letter, in the year prior to the filing of the instant action between the Plaintiff and the Defendants and / or employee(s) of the Defendants regarding the alleged debt each constituted a "communication" as defined by FDCPA § 1692a(2).

48. Telephone conversation(s) and collection/"dunning" letters, such as the second letter, in the year prior to the filing of the instant action between the Plaintiff and the Defendants and / or employee(s) of the Defendants regarding the alleged debt each conveyed information regarding the alleged debt directly or indirectly to the Plaintiff.

49. The second letter is a form letter.

50. On information and belief, Defendants send form letters containing language substantially similar or materially identical to that contained in the second letter to hundreds, if not thousands, of consumers within the State of New York and across the United States.

51. In the second letter, Defendant again fails to disclose to Plaintiff that legal action had already been taken against Plaintiff and again misrepresents that status of the alleged debt and the urgency with which the alleged debt does or does not need to be addressed.

52. Nowhere in the second letter did Defendant EEC inform Plaintiff or other similarly situated consumers that an attorney had already filed a lawsuit/complaint against her back in 2007 by and on behalf of Palisades Acquisition XVI, LLC in Rockland County Supreme Court regarding the alleged debt.

53. Nowhere in the second letter did Defendant EEC inform Plaintiff that an attorney was taking or had already taken legal action against Plaintiff by and on behalf of Palisades Acquisition XVI, LLC for the alleged debt.

54. Nowhere in the second letter did Defendant EEC inform Plaintiff that an attorney had analyzed Plaintiff's case and that an attorney had rendered legal advice to the creditor, Palisades Acquisition XVI, LLC, concerning Plaintiff's case.

55. Nowhere in the second letter did Defendant EEC inform Plaintiff that an attorney had been meaningfully involved in Plaintiff's case and that EEC and/or an attorney had rendered legal advice to the creditor, Palisades Acquisition XVI, LLC, concerning Plaintiff's case prior.

56. Given the actions that had already been taken by EEC and other attorneys, the second letter is false, deceptive, misleading and a misrepresentation.

57. Prior to and at the time EEC had sent the second letter to Plaintiff, an attorney for EEC and other law firms had personally reviewed Plaintiff's alleged debt with Palisades.

58. The second letter is false, deceptive, misleading, and a misrepresentation of the status of the alleged debt in that Defendant misrepresented and/or implied that legal action had not yet been taken against Plaintiff when in fact that is false as legal action has already been taken.

59. The second letter misrepresents the urgency with which the alleged debt must be resolved by Plaintiff as Defendant again did not inform Plaintiff that legal action has already been taken when in fact said information is material to Defendant's claims to payment and Plaintiff's subsequent actions and inactions to said material information.

60. Defendant made a false representation of the character, amount, or legal status of the alleged debt in violation of FDCPA § 1692e(2)(A) by purposely hiding and/or failing to disclose to Plaintiff and other similarly situated consumers that the alleged debt was already sued upon and reduced to judgment some years prior to Defendant EEC's attempts to collect the alleged debt.

61. The letter is a boilerplate "communication" as defined by the FDCPA, the form of which was prepared and approved by EEC individually for use in its collection process whether or not the debts at issue were in a pre-litigation collection status or filed in court for litigation.

62. On or about August 1, 2013, Plaintiff retained the undersigned legal counsel in response to a CPLR § 5231 Income Execution that was served on her by Defendant.

63. On or about August 1, 2013, the undersigned legal counsel mailed and faxed to Defendant a letter of representation.

64. In the letter of representation, Plaintiff demanded that Defendant cease and desist from any and all contact with Plaintiff, third parties and her employer and asked that future communications be directed to her attorney.

65. In the letter of representation, Plaintiff demanded that Defendant validate the alleged debt.

66. In the letter of representation, Plaintiff demanded that Defendant validate the alleged debt as this was the first time Plaintiff became aware of the fact that the alleged debt was reduced to a judgment against her.

67. In the letter of representation, Plaintiff demanded that Defendant provide the name and address of the original creditor(s), if different from the current creditor(s).

68. Defendant responded by sending to Plaintiff's attorney an "Affirmation of Regularity and Default Judgment" but failed to provide the name and address of the original creditor(s), if different from the current creditor(s).

69. Defendant has chosen to comply with Plaintiff's § 1692g demand but failed to do so in its entirety by providing the name and address of the original creditor(s), if different from the current creditor(s).

70. Plaintiff's attorney received no further written or oral communications from Defendant subsequent to providing the "Affirmation of Regularity and Default Judgment".

71. After eventually learning that a default judgment was entered against her and that Defendant was seeking to execute against her wages/income, on or about September 23, 2013, Plaintiff's attorney filed an Order to Show Cause to Vacate the Default Judgment.

72. On or about September 26, 2013, Plaintiff mailed the Order to Show Cause and supporting documentation to Defendant.

73. The Order to Show Cause to Vacate the Default Judgment was scheduled by Rockland County Supreme Court to be heard on October 11, 2013.

74. Despite the above facts, as outlined in lines 62-73, Defendants caused the CPLR § 5231 Income Execution to be served on Plaintiff's employer.

75. Despite the above facts, as outlined in lines 62-73, Defendants did not take affirmative action to ensure that the CPLR § 5231 Income Execution was not executed by Plaintiff's employer while the Order to Show Cause to Vacate the Default Judgment was pending in Rockland County Supreme Court.

76. As a result of Defendant's actions and inactions, Plaintiff's employer garnished Plaintiff's wages on behalf of Defendant during the same week that Plaintiff's Order to Show Cause to Vacate the Default Judgment was pending in Rockland County Supreme Court.

77. Plaintiff retained the undersigned legal counsel to not only challenge the default judgment but also to avoid the embarrassment of a wage garnishment, to avoid the embarrassment of her employer being privy to the state action, and to address the underlying merits of the state action, which may or may not include making payment on the alleged debt, among other reasons.

78. Defendant knew or should have known at the time they garnished Plaintiff's wages that Defendant's claim to payment and the validity of the default judgment were being challenged and that all collection attempts should cease pending the outcome of the Order to Show Cause to Vacate the Default Judgment.

79. As a result of Defendant's actions and inactions in proceeding with the CPLR § 5231 Income Execution and receiving monies while Plaintiff's Order to Show Cause to Vacate the Default Judgment was pending in Rockland County Supreme Court is an unfair and unconscionable collection practice that caused Plaintiff a great deal of embarrassment, anger, and distress.

80. Plaintiff was further distressed that, despite taking affirmative legal steps to challenge the alleged debt/default judgment and despite the stay on enforcement proceedings, that Plaintiff's employer was notified of the alleged debt, notified to begin garnishment, and without also informing Plaintiff's employer that Plaintiff was challenging Defendant's claims in court and that the alleged debt was disputed.

81. Defendant's failure to convey to Plaintiff's employer that the alleged debt was disputed while serving and/or executing the CPLR § 5231 Income Execution on the employer violated FDCPA § 1692e(8).

82. These collection communications from Defendant were abusive, deceptive, misleading, unfair, unconscionable and illegal communications in an attempt to collect this disputed debt, all done in violation of numerous and multiple provisions of the FDCPA, including but not limited to 15 U.S.C. §§ 1692d, 1692e, 1692e(2)(A), 1692e(5), 1692e(8), 1692e(10), 1692f, and 1692f(1), amongst others.

83. As a consequence of the Defendant's action(s) in the year prior to filing of the instant action, the Plaintiff seeks damages, attorneys fees and costs pursuant to FDCPA § 1692k.

84. The actions and inactions of Defendant, as plead in their entirety in this complaint, are deceptive and unlawful acts and practices directed at Plaintiff that caused her injury and/or actual damages.

85. As a consequence of the Defendant's action(s) in the year prior to filing of the instant action, the Plaintiff seeks damages, attorneys fees and costs pursuant to New York State General Business Law § 349.

## FIRST CAUSE OF ACTION
## FAIR DEBT COLLECTION PRACTICES ACT

86. Plaintiff repeats, reiterates and incorporates the allegations contained in paragraphs numbered "1" through "85" herein with the same force and effect as if the same were set forth at length herein.

87. Defendant's debt collection attempts attempted and/or directed towards the Plaintiff violate various provisions of the FDCPA, including but not limited to the following:

    a.    <u>15 U.S.C. §1692d-preface</u>.

  b. <u>15 U.S.C. §1692e-preface, (2)(A), (5), (8), and (10).</u>

  c. <u>15 U.S.C. §1692f-preface and (1).</u>

88. As a result of Defendant's violations of the FDCPA, Plaintiff is entitled to damages, attorneys fees and costs in accordance with the FDCPA.

<b>SECOND CAUSE OF ACTION<br>
<u>NEW YORK STATE GENERAL BUSINESS LAW §349</u></b>

89. Plaintiff repeats, reiterates and incorporates the allegations contained in paragraphs numbered "1" through "88" herein with the same force and effect as if the same were set forth at length herein.

90. Defendant's debt collection efforts attempted and/or directed towards the Plaintiff deceptive and unlawful acts and practices that violated New York State General Business Law § 349.

91. As a result of Defendant's above violations of the New York General Business Law, the Plaintiff has been injured and/or damaged and is entitled to damages, attorneys fees and costs in accordance with the New York General Business Law.

<b><u>PRAYER FOR RELIEF</u></b>

**WHEREFORE**, Plaintiff DOROTHY JEREMIAH demands judgment from the Defendant ELTMAN, ELTMAN & COOPER, P.C. as follows:

  A. For actual damages provided and pursuant to 15 U.S.C. §1692k;

  B. For statutory damages of $1,000.00 provided and pursuant to 15 U.S.C. §1692k;

  C. For damages, trebled, pursuant to New York General Business Law § 349;

  D. For attorneys' fees, costs and disbursements;

  E. For an award of pre-judgment interest on all sums awarded and/or

collected;

   F. For any such other and further relief, as well as further costs, expenses and disbursements of this action, as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff DOROTHY JEREMIAH hereby respectfully requests a trial by jury for all claims and issues in her Complaint to which she is or may be entitled to at a jury trial.

Dated:  November 7, 2013

        Respectfully submitted,

        **LAW OFFICES OF ALLISON POLESKY, P.C.**

        By: _/s/ Allison Polesky_
        Allison Polesky, Esq. (AP5446)
        LAW OFFICES OF ALLISON POLESKY, P.C.
        1 S. Franklin St., Suite 2
        Nyack, New York 10960
        Phone: 914-610-3207
        Facsimile: 914-610-3770
        Email: apolesky@poleskylaw.com
        Attorney for the Plaintiff Dorothy Jeremiah